mine to exercise appellate jurisdiction in such cases, and do not relax somewhat of that severity and legal scrutiny in regard to the doings of justices, we shall have no criminal law worth having. It has been ruled, and not yet overruled by the court, that a criminal of any the most aggravated offence, who has been bailed, and forfeited his recognizance, is clear of the crime. That criminals sentenced to imprisonment and fine for misdemeanors, can be entitled to the bounds; and for a fine only can be released under the insolvent laws. Having hitherto exercised this now disputed appellate jurisdiction, the warrants of magistrates have been examined with the most rigid legal criticism because the magistrates had not framed their warrants with all the exactness of indictments, and their judgments have been reversed, and that wholesome police, so essential to the well-being of our citizens, paralyzed; mittimuses are looked into with the eyes of special pleaders; and, in a recent case, a man was discharged because, having incurred a penalty and being unable to pay it, and having for such inability been committed to the workhouse, the mittimus neglected to state that he was a man of color, although, when brought before the court, he was evidently so; and although the offence could only be committed by a man of color, and it was sufficiently set out, in the mittimus, in every respect, except the words "man of color." We believed the mittimus, then, that he, by possibility, might not be a man of color, against the evidence of our own eyes. But here it was urged, and in all cases where we had heard appeals in such cases, the old maxim, "It is a penal statute, and must be construed strictly," but where the question is jurisdiction or no jurisdiction, it is quite a civil affair; "nothing but an action of debt," and being so we have jurisdiction by the statute. If it be a civil matter, how came we to apply the strict rules of criminal pleading to cases of a civil character only? This seems to be blowing hot and cold with the same breath; to get jurisdiction, the case is merely one of debt, a civil matter altogether; when we get it before us we pounce upon it with all the stern severity and criticism of criminal pleadings, utterly disregarding the directions of the statute that we are to decide according to law, justice, and equity, which I take to be clearly indicative of an intention in the legislature to authorize the court to relax the strict rules of construction in regard to warrants for pecuniary mulcts, if they be really purely civil in their character, if there be enough, though not set out in technical form, in the warrant, to inform the defendant of the offence with which he is charged, or otherwise we disregard entirely the emphatic and important words, justice and equity, and the more especially as it may be supposed to have been in the contemplation of the legislature, that the warrants from which appeals are taken to this court are devised by justices of the peace who are not lawyers by profession, nor skilled in the subtleties of special pleading. I have done with

this objection; and if there be a doubt in the mind of any on this point, I think there can be but little as to the validity of the last objection, namely, "That if this court has jurisdiction generally where the fine is certain and fixed, they have none when the quantum of fine is uncertain, and depends on the discretion of the magistrate between a minimum and a maximum limit."

I need say nothing of the argument, that it is a settled principle, that, from the judgment of a court in the exercise of a discretionary power, there is no appeal, which I thought had great force in it; nor of the argument of the counsel for the corporation, that, inasmuch as the magistrate dismissed the warrant, and exercised, consequently, no arbitrium, that, as the case would be taken up, de novo, in this court, this court was competent, if they reversed the justice's decision, to assess the fine. It is true, if we were to take up the case, and hear the evidence, we might be of opinion that the justice did wrong, and that he ought to have given judgment for the corporation; but, when we had done so, and come to the point of assessing the fine, we should be at fault. Notwithstanding the Proteus character assumed for prosecutions for pecuniary penalties, I consider them as belonging to the criminal side of the court, as real penal statutes, whether animadverting on mala in se, or mala prohibita, and the defendant entitled to all the privileges given by the statute; and one is, that the fine shall be assessed by the justice, at his discretion, and not by this court, at theirs. Suppose, now, after reversing the magistrate's decision, we come to the consideration of assessing it, where shall we fix it; at the minimum, the maximum, or between the two? Neither of the two latter, because the law has given this power to another and not to us; does it follow, because the law has given it to one, it can be exercised by three others? The defendant has a right to have his exclusive judge, as to that point; well, it may be said, we may safely fix it at the minimum term; the defendant could have nothing to complain of there; but the law would, for it contemplated something more—a higher assessment—a greater fine; we must take the whole power of the justice, or none; we cannot execute half a law, because we cannot get at the other half; all the range between five and ten dollars is barred against us.

For these reasons, I am for affirming the judgment.

## Case No. 17,229.

### WASHINGTON v. FOWLER.

[4 Cranch, C. C. 458.] [1]

Circuit Court, District of Columbia. March Term, 1834.

#### COMPETENCY OF WITNESS.

A witness is not incompetent because he feels himself bound in honor to indemnify the party

[1] [Reported by Hon. William Cranch, Chief Judge.]

who calls him as a witness in case the judgment should be against him, if he has made no promise to indemnify him, nor is bound in law so to do.

Debt on the auctioneer's bond of Moses Poor, the defendant being his surety. Judgment having been rendered against Mr. Poor, and the defendant having given him a release, the defendant called him as a witness, and upon cross-examination he answered that he felt bound in honor to indemnify the defendant if judgment should go against him, but had not promised or in any manner bound himself so to do. Whereupon the plaintiff's counsel objected, and contended that the testimony of Mr. Poor should be rejected as incompetent on account of that honorable feeling.

But THE COURT (nem. con.), upon the authority in 4 Starkie, 746, overruled the objection.

See, also, Corporation of Washington v. Webb, at November term, 1834, S. P. (not reported).

———

WASHINGTON (FRANCE v.). See Case No. 5,028.

WASHINGTON (FRIEND v.). See Case No. 5,121.

WASHINGTON (GIBB v.). See Case No. 5,380.

WASHINGTON (HALL v.). See Case No. 5,953.

WASHINGTON (HALLIHAN v.). See Case No. 5,962.

WASHINGTON (HILL v.). See Case No. 6,501.

WASHINGTON (JENNINGS v.). See Case No. 7,284.

WASHINGTON (JOHNSON v.). See Case No. 7,420.

WASHINGTON (KENNEDY v.). See Case No. 7,708.

———

## Case No. 17,230.

### WASHINGTON v. LASKY.

[5 Cranch, C. C. 381.] [1]

Circuit Court, District of Columbia. Nov. Term, 1837.

CORPORATION OF WASHINGTON—CHARTER POWERS.

The corporation of Washington, under its charter, has power to prohibit ordinary keepers to sell spirituous liquors to free colored persons.

Appeal from the judgment of Mr. Coote, a justice of the peace, who nonsuited the corporation in an action of debt for a penalty of twenty dollars; "for that the said Lucy Lasky, the keeper of a tavern or ordinary, in the third ward, at the city of Washington, did sell, or permit to be sold, spirituous liquors to slaves or other persons of color, on Sundays, and other days, between sunset and

———

[1] [Reported by Hon. William Cranch, Chief Judge.]

sunrise on the 4th instant, and at divers other times, contrary to the act or acts of the said mayor, &c., on that subject made and provided." By the by-law of November 5, 1832, § 8 (Rothwell, 263), it is enacted, "That all keepers of ordinaries or taverns, shall be, and they are hereby prohibited from selling spirituous liquors to slaves, or other persons of color, on Sundays, and other days between sunset and sunrise; and any keeper of a tavern or ordinary, who shall sell, or permit to be sold, any spirituous liquors, in violation of this prohibition, shall, on conviction for the first offence, be fined twenty dollars; and for the second offence, forfeit his license, which shall be annulled by the mayor."

CRANCH, Chief Judge. The question submitted, as I understand it, is, whether under the power given by the 7th section of the charter of 1820, to provide for licensing, taxing, and regulating ordinaries and taverns, the corporation can prohibit licensed tavern-keepers to sell spirituous liquors to free colored persons, there being no like prohibition to sell to white persons, to wit: Can the corporation, in this respect, lawfully discriminate between white and colored persons? I am of opinion that, under the power to provide for licensing, taxing, and regulating ordinaries and taverns, the corporation has power to prohibit the sale of spirituous liquors to colored persons of all descriptions, free or bond, young or old, or to minors, apprentices, servants, hack-drivers, porters, &c., whether white or colored.

MORSELL, Circuit Judge, concurred; but for the informality and uncertainty of the charge in the warrant,

THE COURT (THRUSTON, Circuit Judge, absent) affirmed the judgment.

———

WASHINGTON (LEVY COURT OF WASHINGTON COUNTY v.). See Case No. 8,306.

———

## Case No. 17,231.

### WASHINGTON v. LYNCH.

[5 Cranch, C. C. 498.] [1]

Circuit Court, District of Columbia. Nov. Term, 1838.

CORPORATION OF WASHINGTON—CHARTER POWERS—LICENSE ON DOGS—SUFFICIENCY OF WARRANT.

1. The corporation of Washington, under its authority to prevent nuisances, may prohibit the keeping of a dog in the city without a license, and may require money to be paid for the license.

2. A warrant is too vague and uncertain which charges that the defendant "did on or about the 20th of July inst., own, harbor, or keep a female of the dog kind in Washington

———

[1] [Reported by Hon. William Cranch, Chief Judge.]